No. 23-40098

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ELDEN DON BRANNAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

––––––––––––––

**PETITION FOR REHEARING EN BANC**

––––––––––––––

MARJORIE A. MEYERS
Federal Public Defender,
Southern District of Texas

EVAN G. HOWZE
Assistant Federal Public Defender
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600
*Counsel for Petitioner*

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................... ii

Introduction and Rule 35(b) Statement ...................................................... 1

Statement of the Case ............................................................................... 2

Reasons for Granting Rehearing En Banc ................................................... 6

I.  The panel's interpretation of the National Firearms Act, which it felt bound by *United States v. Beason* to apply, is wrong ...................................... 6

II.  *Beason* conflicts with an authoritative Eleventh Circuit decision and is inconsistent with multiple other authoritative decisions of this Court ............. 10

III.  The question presented is important ................................................. 12

Conclusion .............................................................................................. 14

Certificate of Service .............................................................................. 15

Certificate of Compliance ........................................................................ 15

Petition Appendix
  Panel Slip Opinion (App.) ...................................................................... 1a

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) ............................................ 9

*Ruan v. United States*, 597 U.S. 450 (2022) ........................................ 9, 12

*Staples v. United States,* 511 U.S. 600 (1994) ................................... *passim*

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) ............................................ 13

*United States v. Beason*, 690 F.2d 439
 (5th Cir. 1982) ................................................................ *passim*

*United States v. Harbarger*, 46 F.4th 287
 (5th Cir. 2022) ................................................................ *passim*

*United States v. Hammond*, 371 F.3d 776
 (11th Cir. 2004) ............................................................... *passim*

*United States v. Jennings*, 195 F.3d 795
 (5th Cir. 1999) ...................................................................... 7

*United States v. Neil*, 138 F. App'x 418
 (3d Cir. 2005) ...................................................................... 10

*United States v. Palomares*, 52 F.4th 640
 (5th Cir. 2022) ...................................................................... 9

*United States v. Ross*, 458 F.2d 1144
 (5th Cir. 1972) ................................................................ *passim*

## STATUTES AND RULES

26 U.S.C. § 5801 ................................................................. 1, 7

26 U.S.C. § 5802 ................................................................... 7

# STATUTES AND RULES – (cont'd)

26 U.S.C. § 5811 ................................................................................ 7

26 U.S.C. § 5812 ................................................................................ 7

26 U.S.C. § 5841 ................................................................................ 7

26 U.S.C. § 5842 ................................................................................ 7

26 U.S.C. § 5843 ................................................................................ 7

26 U.S.C. § 5845(f) ...................................................................... *passim*

26 U.S.C. § 5845(f)(1)(A) .................................................................. 1

26 U.S.C. § 5861(d) ...................................................................... *passim*

26 U.S.C. § 5851 ................................................................................ 7

26 U.S.C. § 5852 ................................................................................ 7

26 U.S.C. § 5853 ................................................................................ 7

26 U.S.C. § 5854 ................................................................................ 7

Fed. R. App. P. 35(b)(1)(A) ............................................................... 2

Fed. R. App. P. 35(b)(1)(B) ............................................................... 2

## MISCELLANEOUS

LaFave, Substantive Criminal Law § 1.8(c) (3d ed. 2018) ........................................ 9

## INTRODUCTION AND RULE 35(b) STATEMENT

This petition concerns the National Firearms Act and its proscription, 26 U.S.C. § 5861(d), on the unregistered possession of the narrow subset of inherently dangerous "firearms" enumerated and defined in Section 5845. Because the line between proscribed and lawful weapons is blurry and often technical, and the penalty for misperceiving it as high as 10 years, Section 5861(d) requires proof of scienter—a guilty mind. *Staples v. United States*, 511 U.S. 600, 608-14 (1994). To obtain a conviction, therefore, the government is obliged to prove not only that an alleged "firearm" in fact had all the characteristics necessary to bring it within the Act, but also that the defendant knew the weapon had each such characteristic. *Id.* at 619-20.

This case implicates the characteristics and mental state necessary to prove the unlawful possession of a "destructive device," defined in Section 5845(f) to include, pertinent here, "any explosive . . . bomb." §5845(f)(1)(A). The statute also lists several categories of devices that the term "shall not include." First among the varieties of non-destructive devices is "any device which is neither designed nor redesigned for use as a weapon." That tees up the following question of statutory interpretation:

> Whether, for purposes of an alleged violation of Section 5861(d), Section 5845(f)'s declaration that "[t]he term 'destructive device' shall not include any device neither designed nor redesigned for use as a weapon" describes an essential characteristic incorporated into the "firearm" and mental-state elements of the charged offense, or instead defines an affirmative defense to liability.

This question satisfies the criteria for en banc review for two primary reasons. First, it has caused multiple panels of this Court to publish conflicting decisions as to the meaning of the quoted language, and thus the nature and scope of the elements of a Section 5861(d) offense involving an alleged "destructive device." *Compare United States v. Harbarger*, 46 F.4th 287, 290-91 (5th Cir. 2022), *and United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972), *with United States v. Beason*, 690 F.2d 439, 445-46 (5th Cir. 1982), *and* App. 5a-8a. The full Court's intervention is thus "necessary to secure and maintain uniformity of the court's decisions." Fed. R. App. P. 35(b)(1)(A).

Second, rehearing is appropriate because the question presented has divided the courts of appeals. *See* Fed. R. App. P. 35(b)(1)(B). As the panel correctly observed (App. 6a n.4), the prior Fifth Circuit decision it deemed controlling, *Beason*, conflicts with the Eleventh Circuit's authoritative decision in *United States v. Hammond*, 371 F.3d 776, 779-81 (11th Cir. 2004).

## STATEMENT OF THE CASE

In February of 2022, petitioner Elden Don Brannan lived with his older sister, Stacy Sosa, their parents, and Ms. Sosa's three children in Corpus Christi, Texas. App. 2a. Born on the 3rd of July, petitioner has had a "fascination" with fireworks "since he was a kid" and continued to use them "[a]ll the time" up to present day. ROA.446, 453-54. Such is his passion, petitioner maintained a stock of fireworks in his bedroom closet, "spend[ing] hundreds of dollars on them" so he could have fireworks at the

2

ready to set off—particularly as a means to entertain his sister's kids—"any time" the family "had anything going on." ROA.446-47.

This petition arises from petitioner's conviction, after a jury trial, on a single count charging him with the possession of an unregistered "destructive device"—specifically, an "explosive bomb"—contrary to 26 U.S.C. § 5861(d). App. 2a. The charge stemmed from an unrelated family squabble between petitioner and Ms. Sosa's then-boyfriend, during which Ms. Sosa told the responding officer that she had seen something in petitioner's closet that might be a "pipe bomb"—a description she based on the portrayals of such devices she had seen on television. ROA.442, 448.

Officers found the alleged "bomb" in plain view on the closet's top shelf, next to petitioner's commercial-fireworks collection. ROA.463-64, 923-24. It was a slender, tape-wrapped metal tube, six inches in length and an inch in diameter. App. 2a. The top end was covered by some tape but "not fully enclosed," with a hobby fuse passed though cardboard protruding from the opening, and a hard piece of clay underneath. ROA.490, 500, 545. The bottom consisted of a tape-covered plastic bottle cap above five dimes and a piece of wax. ROA.537-38, 544-45. In the middle lay 39.7 grams of low explosive, pyrotechnic-powder composition transplanted from one of the nearby fireworks.[1] ROA.283-84, 522-25, 546.

---

[1] For context, the donor firework—an aerial shell designed to launch into the air and produce a colorful display upon exploding—contained 500 grams of pyrotechnic composition. ROA.602.

Petitioner's trial turned on whether the government could prove two contested elements: (1) that the item was in fact an NFA "firearm," in that it had all the essential features of an "explosive bomb," and (2) that petitioner knew the item had each such feature. Relying on this Court's decision in *United States v. Harbarger*, 46 F.4th 287 (5th Cir. 2022), and *Staples v. United States*, 511 U.S. 600 (1994), petitioner moved for judgment of acquittal on the ground that the government had failed to marshal proof "from which design to create [explosive] weaponry could be inferred" beyond reasonable doubt. *Harbarger*, 46 F.4th at 291; *see* App. 3a. Petitioner also urged the district court to instruct the jury, consistent with *Harbarger*, as to the government's burden to prove that his device was purposely designed as a weapon. App. 3a. In the case of an explosive *bomb*, he contended, this meant that the device was designed to both explode, and do so as a means of inflicting harm. ROA.230-35, 239.

The government argued that it was not obliged to prove the device was designed to explode as a weapon because, under *United States v. Beason*, 690 F.2d 439 (5th Cir. 1982), it is the defendant's burden to disprove design as weaponry as an affirmative defense; and that *Beason*, not *Harbarger*, controlled on the issue. ROA.236-38. The district court agreed and denied petitioner's Rule 29 motions and his proposed instructions. App. 3a. As to the two key contested elements, the jury was thus instructed that it was required to find that "this destructive device was an explosive bomb," and that petitioner "knew the characteristics of the destructive device, an explosive bomb."

ROA.115-16. The only guidance the jury received as to what that meant was: "In this case, the term destructive device means any explosive bomb." ROA.116. The jury, so instructed, voted to convict.

On appeal, petitioner renewed his insufficiency claim and alleged constitutional instructional error for the failure to instruct, consistent with Section 5845(f)'s plain text, *Harbarger*, and *Staples*, that to obtain a Section 5861(d) conviction the government must prove an alleged destructive device was designed for use as the relevant category of weapon, and that the defendant knew the device was so designed. Def. Br. 10-17. He further contended that, as applied to a case like his, where the defendant is also the designer, this entails proving the defendant intended to design the relevant type of weapon. Def. Br. 18-20. Petitioner argued that *Beason* did not foreclose these interpretations, *id.* at 23-24, and, in any event, should not control because it conflicted with an earlier decision of this Court, *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972), and the Supreme Court's intervening decision in *Staples*. Def. Br. 25-26.

The panel affirmed, holding that *Beason* foreclosed petitioner's interpretation of the NFA. App. 5a-6a. It thus rejected petitioner's insufficiency and charge-error claims on the premise that the government accordingly had no duty to prove, and the district court no duty to instruct the jury to find, that petitioner's "device *was* designed as a weapon." App. 5a (original emphasis); *see id.* at 5a-8a. Though disclaiming any conflict with *Harbarger* and *Ross*, the panel acknowledged that *Beason*, and thus, its

decision, conflicts with the Eleventh Circuit's decision in *United States v. Hammond*, 371 F.3d 776 (11th Cir. 2004). App. 6a n.4.

## REASONS FOR GRANTING REHEARING EN BANC

**I.    The panel's interpretation of the National Firearms Act, which it felt bound by *United States v. Beason* to apply, is wrong.**

The panel's decision warrants en banc rehearing because it embraces the wrong side of an intra- and inter-circuit conflict over the meaning and elemental significance of the National Firearms Act's insistence that "[t]he term 'destructive device' shall not include any device neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

The Act's text, structure, and purpose make clear that this language operates as a "crucial limitation" on the defined term's scope, *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972), by "exclud[ing] from coverage any explosive[, incendiary, poison gas, or large-bore projectile] device not *designed* for use as a *weapon*." *United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004) (original emphasis). That construction plainly follows from the text: to say that a term "shall not include" a thing is to say that term excludes—i.e., is not—that thing. A destructive device *is* an explosive bomb; so, "any device" not designed (or redesigned) for use as a weapon *is not* an explosive bomb. As the Eleventh Circuit cogently put it, a "device that explodes is not covered by the statute merely because it explodes. Statutory coverage depends upon

proof that a device is an explosive *plus* proof that it was designed as a weapon." *Hammond*, 371 F.3d at 780 (original emphasis).

Section 5845(f)'s place in the statutory scheme reinforces this effect. Section 5845 is a definitional section devoted to identifying the entire class of NFA "firearms." Its various subsections, including (f), thus provide notice as to which firearms and devices are, and are not, subject to the Act's registration, identification, recording, and taxing requirements. *See* 26 U.S.C. §§ 5801–02, 5811–12, 5841–43. They do not, however, purport to exempt or excuse any of the various forms of regulated conduct— like possession without registration, *id.* § 5861(d)—vis-à-vis the covered firearms. Indeed, when the Act intends to exempt otherwise covered conduct or individuals, it does so explicitly in separate provisions. *See id.* §§ 5851-54. By limiting its coverage to devices made or converted so as to deploy the relevant destructive capability as a weapon, then, Section 5845(f) aligns with the Act's purpose of identifying the narrow subset of weapons that are so "inherently dangerous and generally lacking usefulness, except for violent and criminal purposes," *United States v. Jennings*, 195 F.3d 795, 799 (5th Cir. 1999), as to merit strict circumscription of their civilian use.

That devices not designed as weapons are "excluded from th[e] definition" of destructive device, *United States v. Harbarger*, 46 F.4th 287, 289 (5th Cir. 2022), has clear import to the elements of a Section 5861(d) prosecution: an alleged destructive device's character as "*designed* for use as a weapon" of the relevant type is an essential

fact the government must prove to establish its status as a "firearm" the NFA required him to register. *Id.* at 291 (quoting *Hammond*, 371 F.3d at 780); *see id.* at 292 (reversing conviction because the "evidence was insufficient to prove" the alleged explosive bomb was "'designed' as a weapon"). And, under *Staples v. United States*, 511 U.S. 600, 619-20 (1994), the defendant's knowledge of that characteristic is a fact the government must prove to establish the culpable mental state Section 5861(d) requires.

The instant panel felt constrained by *United States v. Beason*, 690 F.2d 439 (5th Cir. 1982), to reject this straightforward analysis. As the panel observed, *Beason* read Section 5845(f)—post-*Ross*, and pre-*Staples*—not as excluding certain devices from the NFA's coverage on account of their design for some use other than as a weapon, but rather as setting out an affirmative defense to Section 5861(d) liability. App. 5a-6a; *see Beason*, 690 F.2d at 445. But, for the reasons already described (and, though beyond the scope of this petition, quite a few more, *see* Def. Br. 11-17), that reading is at odds with straightforward application of ordinary interpretive tools to the text—most evidently the plain meaning of Section 5845(f)'s command "not" to "include" any device "neither designed nor redesigned for use as a weapon" among the regulated "destructive devices." In other words, devices not designed as weapons need not be registered in the first place, and thus, Section 5861(d) has no interest in their receipt or possession. That is the opposite of the core notion of an affirmative defense as "a

'justification or excuse which is a bar to the imposition of criminal liability' on conduct that satisfies the elements of an offense." *Ruan v. United States*, 597 U.S. 450, 472 (2022) (Alito, J., concurring) (quoting LaFave, Substantive Criminal Law § 1.8(c) (3d ed. 2018)).

Notably, *Beason* did not engage the text (much less consult context and structure) at all, instead relying on a Senate Report to support its assumption that the language operates as an "exception." *Beason*, 690 F.2d at 445 & n.8. In the modern interpretive era, however, legislative history is understood as relevant, if ever, only upon encountering genuine ambiguity in the text. *See United States v. Palomares*, 52 F.4th 640, 646 (5th Cir. 2022) (citing, e.g., *Bostock v. Clayton Cnty.*, 590 U.S. 644, 674 (2020)). There is no such ambiguity here. *Staples*, moreover, has since clarified that the characteristics set out in Section 5845's definitions set the parameters not only for proving Section 5861(d)'s "firearm" element, but also for proving the defendant's culpable mental state. *See* 511 U.S. at 619-20. And the observation (App. 5a-6a; *Beason*, 690 F.2d at 445) that Section 5861(d)'s elements may be alleged accurately without reference to the exclusionary language is of little force if, as both the text and common sense dictate, the allegation that a defendant possessed an unregistered explosive bomb *is* an allegation that he possessed a device designed for use as an explosive weapon (in the same way that to allege "machinegun" possession is to allege the possession of gun that will fire continuously with one trigger function, § 5845(b)).

## II. ***Beason*** **conflicts with an authoritative Eleventh Circuit decision and is inconsistent with multiple other authoritative decisions of this Court.**

The panel rightly recognized that *Beason* squarely conflicts with the Eleventh Circuit's *Hammond* decision. App. 6a n.8; *see United States v. Neil*, <u>138 F. App'x 418, 420-21</u> n.3 (3d Cir. 2005) (acknowledging conflict between *Hammond* and *Beason*, but pretermitting answer). Under *Hammond*, a device "is a 'destructive device' within the meaning of the statute if, and only if, it was designed for use as a weapon," <u>371 F.3d at 780</u>, and the government's failure to prove that element warrants judgment of acquittal. *See id.* at 780-82 (so holding). As the panel observed, under *Beason*'s affirmative-defense construction, the government had no duty to "prove [petitioner's] device *was* designed as a weapon," and the district court had no duty to so instruct the jury. App. 5a (original emphasis). That direct conflict with an authoritative, and persuasive, decision of another court of appeals warrants en banc review.

While the panel correctly perceived the conflict with *Hammond*, it erred in failing to appreciate *Beason*'s inconsistency with *Ross* and *Harbarger*.

First, as noted above, *Harbarger* expressly relied on *Hammond* as an example of the correct interpretation of Section 5845(f): "The court [the Eleventh Circuit, in *Hammond*,] made clear that a device is not illegal simply because it explodes; it must also be *designed* for use as a weapon." *Harbarger*, <u>46 F.4th at 291</u> (citing *Hammond*, <u>371 F.3d at 780</u>). To recognize that *Beason*'s interpretation conflicts with *Hammond*, then, is to acknowledge the same conflict with *Harbarger*.

The panel decision fails to note *Harbarger*'s reliance on *Hammond*. This may explain the panel's misguided suggestion that "*Harbarger* d[id] not address" whether the disputed language "is an affirmative defense or an element." App. 7a. *Hammond*, as the panel did note (App. 6a n.4), construed that language as describing an essential feature of an NFA "destructive device," and thus a fact necessary to prove the firearm element in a Section 5861(d) prosecution. And so did *Harbarger*. Even apart from its express reliance on *Hammond*, *Harbarger* held *the government's* evidence insufficient *because* it failed to prove the defendant's device was "'designed' as a weapon." 46 F.4th at 292. For the lack of evidence of that fact to warrant reversal of the conviction, the fact was necessarily essential to proving the "firearm" element of the offense.

The panel likewise erred in dismissing any tension between *Beason* and *Ross*. First, contrary to the panel's suggestion (App. 6a), *Ross* did not only address a vagueness argument; the defendant also argued that his device "[wa]s not a 'destructive device' as that term is defined in § 5845(f)." *Ross*, 458 F.2d at 1145. That is an interpretive sufficiency claim. Second, the fact that the Court's discussion disposing of the defendant's claims was "brief," App. 6a, and did not require the Court to state whether the scrutinized language "is an element or an affirmative defense," App. 6a, does not reduce the authoritative force of the first-in-time panel's construction of the statutory text as "itself containing the crucial *limitation* that a destructive device does not include any device not designed or redesigned for use as a weapon." *Ross*, 458 F.2d at

1145 (emphasis added). That construction is in obvious tension with the later interpretation adopted in *Beason*. It is, however, consistent with *Harbarger*'s reading of the same language as an "exclu[sion]," 46 F.4th at 289, with the effect of making design as weaponry a characteristic essential to guilt under Section 5861(d).

## III.    The question presented is important.

While the conflicts noted thus far suffice to warrant en banc review, the full Court should also intervene because a correct and clear answer to the question presented is important.

"In criminal law, the distinction between the elements of an offense and an affirmative defense is well-known and important." *Ruan*, 597 U.S. at 468 (Alito, J., concurring). That is especially true where, as here, the answer implicates the degree of knowledge necessary to separate innocent and criminal conduct. *See Staples*, 511 U.S. at 605. Petitioner's device was made entirely of components that were perfectly lawful for him to own and possess, including the commercial fireworks it mimicked. And while the trial featured no evidence of behavior consistent with a desire to make or use a bomb, the government's own case included ample evidence suggestive of a possibly negligent or reckless fireworks enthusiast. Indeed, the experienced district court twice highlighted the apparent ambiguity as to whether petitioner's device was meant to explode at all, let alone as a means of causing harm—first describing the

evidence as having "chinn[ed] the bar minimally enough" to cross the Rule 29 threshold (ROA.577-78), and later registering its view that there were "two very good experts on either side and the jury could go either way." ROA.239. Thus, as in *Harbarger*, petitioner's trial came down to whether he had the "scienter," 46 F.4th at 290, necessary to render his possession of this ambiguous device composed of commonplace items illegal. Yet *Beason* prevented petitioner from stressing to the jury that *the government* bore the burden to prove that mental state to the exclusion of reasonable doubt. At a minimum, the merits preview above evinces strong reason to suspect that *Beason*'s reading of Section 5845(f) is incorrect, and that its application here accordingly denied petitioner his Sixth Amendment right to a jury instructed as to every fact necessary to prove his guilt. *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993).

Finally, in addition to the important business of clarifying the essential elements of a federal crime punishable by up to 10 years, the question presented has significant practical consequences for practitioners in this Circuit.

The panel's failure to explain, let alone resolve, the dissonance between *Beason* and *Harbarger* leaves the law in this Circuit in a state of deep confusion. Under the status quo, trial judges, practitioners, and even future panels are left to wonder: when is an alleged destructive device's "design []or redesign for use as a weapon" something the government must prove on pain of directed acquittal, as *Harbarger* held; and

13

when does the defendant instead bear the burden of disproving that seemingly essential fact, as the panel held that *Beason* requires, while also suggesting that *Harbarger* remains good law.

Only the en banc Court can resolve the current state of indeterminacy reflected in its decisions in this significant and recurring context. The Court should do so, and clarify that an alleged destructive device's character as designed (or redesigned) for use as a weapon is a fact essential to its status as a registrable "firearm" under the National Firearms Act, and a fact the government accordingly must prove to obtain a conviction under Section 5861(d).

## CONCLUSION

For the reasons stated, this Court should grant the petition.

Respectfully submitted,

Marjorie A. Meyers
Federal Public Defender,
Southern District of Texas

Evan G. Howze
Assistant Federal Public Defender
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600
*Counsel for Petitioner*

May 24, 2024

## CERTIFICATE OF SERVICE

I certify that this petition was served upon counsel for appellee-respondent by notice of electronic filing.

s/ *Evan G. Howze*
EVAN G. HOWZE

## CERTIFICATE OF COMPLIANCE

1.  This petition contains 3,466 words, and accordingly complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A).

2.  This petition complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared with the current version of Microsoft Word software, Microsoft Office 365 edition, using the proportionally spaced, Times New Roman typeface in both the text (14-point) and footnotes (12-point).

3.  This petition was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4.  This petition complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

5.  This petition complies with the electronic-submission requirement of 5th Cir. R. 25.2.1 because it is an exact copy of the paper document.

6.  This petition has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

s/ *Evan G. Howze*
EVAN G. HOWZE

# United States Court of Appeals for the Fifth Circuit

---

No. 23-40098

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee,*

*versus*

Elden Don Brannan,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-184-1

---

Before Elrod, Willett, and Duncan, *Circuit Judges.*

Stuart Kyle Duncan, *Circuit Judge*:

A federal jury found Elden Don Brannan guilty of possessing an unregistered "destructive device" in violation of 26 U.S.C. § 5861(d). On appeal, Brannan contends the evidence failed to support his conviction because the Government did not prove that the device—a sealed metal pipe containing pyrotechnic material harvested from fireworks—was "designed for use as a weapon." *See id.* § 5845(f). We disagree. Under our binding precedent, this exception to § 5861(d) is an affirmative defense, not an element of the crime. We therefore affirm Brannan's conviction.

**APPENDIX**

No. 23-40098

## I.

Brannan lived with his sister and her three children in Corpus Christi, Texas. In 2022, Brannan's sister called 911 to report that Brannan had assaulted her boyfriend and was threatening suicide. When police arrived, she told them Brannan had a "pipe bomb" in his bedroom closet. A bomb squad came and removed the device. Brannan was arrested and later indicted by a grand jury for possessing an unregistered "destructive device" in violation of 26 U.S.C. § 5861(d).

His sister testified at trial that, weeks before the 911 call, Brannan built the device at their kitchen table from disassembled fireworks. Various Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) personnel testified about the device's features.[1] It was a fused metal pipe wrapped in tape, six inches long and one inch in diameter. Its top was sealed with a cardboard and clay plug; its bottom with a waxy material, five dimes, and a plastic bottle cap. Inside was another clay plug along with a powder containing pyrotechnic stars harvested from fireworks, a common feature of pipe bombs. Once the fuse was lit, the powder would burn, generate gas, and—because the pipe was sealed—eventually explode. Metal pieces and the dimes would fly out as shrapnel. Given these characteristics, ATF Agent and Explosive Enforcement Officer Scott McCullough "determined it was an explosive or improvised explosive bomb."

Brannan's defense was that the device was not an explosive but rather a "makeshift roman-candle or fountain firework" that was "designed to emit a pyrotechnic display." His expert witness, Michael Hefti, testified the device would not have exploded because its non-metallic plugs could not

---

[1] There was testimony from two ATF agents, an ATF chemist, and an ATF explosives officer.

**APPENDIX**

No. 23-40098

have contained the expanding gas.[2] At the same time, Hefti admitted the device's metal structure was "not typical" of improvised fireworks. He also repeatedly admitted he did not know what purpose the dimes served, hypothesizing they might have helped seal the bottom of the pipe.

Brannan moved for acquittal after the Government's case, after his case, and again at the close of all evidence. He argued the evidence was insufficient to show he had designed the device as a weapon. Those motions were all denied. Brannan also asked the court to instruct the jury that, to convict him under 26 U.S.C. § 5861(d), it had to find he had intentionally designed the device for use as a weapon. The court rejected this proposed instruction, too. It reasoned that, under *United States v. Beason*, 690 F.2d 439, 445 (5th Cir. 1982), Brannan's intent to design the device as a weapon was not an element of the offense but an affirmative defense. Brannan declined to assert that affirmative defense, however.

Adopting the Fifth Circuit pattern instructions, the district court instructed the jury that, to convict Brannan, it had to find the following:

> *First*: That [Brannan] knowingly possessed a destructive device.
>
> *Second*: That this destructive device was an explosive bomb.
>
> *Third*: That [Brannan] knew the characteristics of the destructive device, an explosive bomb.
>
> *Fourth*: That the destructive device was in operating condition or could readily have been put in operating condition; and

---

[2] Hefti is an attorney with a military background in explosive ordinance disposal and post-blast investigations. Brannan himself did not testify.

**APPENDIX**

No. 23-40098

*Fifth*: That this destructive device was not registered to [Brannan] in the National Firearms Registration and Transfer Record.[3]

*See* FIFTH CIRCUIT PATTERN JURY INSTRUCTION (Criminal) § 2.102 (2019).

The jury found Brannan guilty. The court subsequently sentenced him to 24 months in prison followed by three years of supervised release.

Brannan timely appealed his conviction. As he did in the district court, he argues that the evidence was insufficient to convict him and that the jury instruction omitted an element of the offense.

## II.

We review Brannan's properly preserved challenge to the sufficiency of the evidence *de novo. See United States v. Scott*, 70 F.4th 846, 854 (5th Cir. 2023). Nonetheless, "[a] defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020) (citation omitted). We review the evidence "in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007).

Challenges to jury instructions, though typically reviewed for abuse of discretion, are reviewed *de novo* when, as here, "the objection is based on statutory interpretation." *United States v. Stanford*, 823 F.3d 814, 828 (5th Cir. 2016). But it is well-settled "that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct

---

[3] The instructions also explained that it did not matter whether Brannan knew that the firearm was registered or had to be registered.

**APPENDIX**

No. 23-40098

statement of the law." *United States v. Richardson*, <u>676 F.3d 491, 507</u> (5th Cir. 2012) (citation omitted).

## III.

It is a federal crime for a person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." <u>26 U.S.C. § 5861(d)</u>. The term "firearm" embraces "a destructive device," *see id.* § 5845(a)(8), whose definition in turn includes "any explosive . . . bomb," *id.* § 5845(f). Excluded from the latter definition, however, is "any device which is neither designed nor redesigned for use as a weapon." *Id.* § 5845(f). To convict a defendant under § 5861(d), the Government must prove the defendant "knew of the features" of the destructive device that bring it under the law's prohibition. *See Staples v. United States*, <u>511 U.S. 600, 619</u> (1994); *United States v. Reyna*, <u>130 F.3d 104, 108</u> (5th Cir. 1997).

Brannan's arguments focus on the exception in § 5845(f) for a device not "designed for use as a weapon." He argues that the Government must affirmatively prove the device *was* designed as a weapon and that the Government failed to do so. Likewise, Brannan argues the jury instructions were inadequate because they did not include this purported element. We disagree with both arguments.

Our precedent forecloses Brannan's first argument. Decades ago, we held in *Beason* that § 5845(f)'s exceptions are affirmative defenses, not offense elements. <u>690 F.2d at 445</u>. As we explained, "[e]xceptions to statutory definitions are generally matters for affirmative defenses, especially where the elements constituting the offense may be defined accurately without any reference to the exceptions." *Ibid.* That applied here, we continued, because § 5861(d) defines a "destructive device" to include "explosive bombs," meaning its elements can be defined accurately without

**APPENDIX**

No. 23-40098

referring to the exceptions. *Ibid.*; *see also United States v. Wise*, 221 F.3d 140, 148 (5th Cir. 2000) (noting the "well-established rule of criminal statutory construction that an exception set forth in a distinct clause or provision should be construed as an affirmative defense and not as an essential element of the crime" (citation omitted)).[4] Because we are bound by *Beason*, we reject Brannan's contention that the Government must affirmatively prove § 5845(f)'s "not designed as a weapon" exception as an element of the crime.

Brannan's attempts to get around *Beason* are unavailing. First, he suggests that *Beason* ran afoul of *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972), and that, as the earlier decision, *Ross* controls. *See, e.g.*, *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 497 (5th Cir. 2016) (explaining "the earlier case controls" if two decisions conflict). *Beason* and *Ross* do not conflict, however. In *Ross*'s "brief discussion" of whether § 5845(f) is unconstitutionally vague, the panel merely noted that § 5845(f) "contains the crucial limitation that a destructive device does not include any device not designed or redesigned for use as a weapon," and that the Molotov cocktail at issue there "ha[d] no use other than as a weapon." *Ross*, 458 F.2d at 1145. But *Ross* did not address whether this "crucial limitation" is an

---

[4] Our sister circuits mostly agree. *See, e.g.*, *United States v. Musso*, 914 F.3d 26, 28 (1st Cir. 2019); *United States v. Posnjak*, 457 F.2d 1110, 1116 (2d Cir. 1972); *United States v. Dalpiaz*, 527 F.2d 548, 552 (6th Cir. 1975); *United States v. Johnson*, 152 F.3d 618, 623 (7th Cir. 1998); *United States v. Ballinger*, 951 F.2d 362 (9th Cir. 1991) (unpublished); *United States v. Basnett*, 735 F.3d 1255, 1257 (10th Cir. 2013). So far, the only circuit to have diverged is the Eleventh. *See United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004) (holding that the "[s]tatutory coverage depends upon proof that a device is an explosive *plus* proof that it was designed as a weapon"); *see also United States v. Neil*, 138 F. App'x 418, 420–21 n.3 (3d Cir. 2005) (noting conflict between *Beason* and *Hammond* without resolving the issue).

**APPENDIX**

No. 23-40098

element or an affirmative defense. *See ibid.* In *Beason*, we clarified that it is the latter. 690 F.2d at 445.

Brannan next points to *United States v. Harbarger*, 46 F.4th 287 (5th Cir. 2022). There, we reversed Harbarger's § 5861(d) conviction for insufficient evidence. *Id.* at 292. The device at issue was a small, sealed bamboo stick filled with pyrodex (a combustible powder) that Harbarger claimed he used only to "scare beavers and destroy their dams." *Id.* at 291, 288 & n.4. We reversed because the Government's only evidence rebutting Harbarger's claim was "conclusional testimony" by an ATF expert that the device could "fragment" and "destroy property." *Id.* at 291. That alone was not enough to overcome Harbarger's testimony that the device had no nefarious purpose. *Id.* at 292. "[B]reaking up a beaver dam," we explained, "cannot alone sustain a finding that a flimsy explosive device is *designed* as a weapon." *Id.* at 291.

*Harbarger* does not help Brannan for multiple reasons. To begin, *Harbarger* does not address whether the § 5845(f) exception is an affirmative defense or an element of the offense. That is unsurprising, since no one raised that issue. And *Harbarger* could not contradict *Beason*, which has been circuit precedent since 1982.

Furthermore, *Harbarger* does not help Brannan on its own terms. The issue in *Harbarger* was the bamboo stick's destructive potential—something the Government utterly failed to prove. *See ibid.* (noting the Government merely burned off some of the pyrodex but did not "provide any other meaningful evidence from which the design to create weaponry could be inferred"). By contrast, the issue here is whether the pipe was meant to explode and fragment or only, as Brannan claimed, to "emit a pyrotechnic display" from one end. The Government provided ample evidence contradicting Brannan's claim and showing the device would explode and

**APPENDIX**

No. 23-40098

produce dangerous metal shrapnel.[5] *Cf. ibid.* (observing that any fragments from the bamboo stick "do not resemble in dangerousness the relevant fragmentation in other cases"). Presented with this evidence on both sides, the jury convicted Brannan. We are not at liberty to disturb its verdict. *See, e.g.*, *United States v. Velasquez*, 881 F.3d 314, 328 (5th Cir. 2018) (per curiam) ("The jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." (citation omitted)).

Finally, for all the foregoing reasons, we also conclude that the district court did not err by following our circuit's pattern instructions and declining to add "designed as a weapon" as an element of § 5861(d). *See Richardson*, 676 F.3d at 507 (explaining "[i]t is well-settled . . . that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law" (citation omitted)).

AFFIRMED.

---

[5] For instance, Agent McCullough explained how the pipe's sealed ends would confine the expanding gas and cause the pipe to explode. He also noted that the placement of the fuse and lift charge in Brannan's device differed from those in fireworks. Indeed, Hefti himself noted that the device's metal structure and dimes were not typical of fireworks. And Brannan's sister testified that he had never previously constructed fireworks.

Moreover, *Harbarger* also suggested that, given their inherent dangerousness, "metal pipe[s] containing explosives" are "*per se* weapons under the NFA." 46 F.4th at 289 n.5. Indeed, we have repeatedly determined that pipe bombs are "destructive devices" within the meaning of § 5845(f). *See, e.g.*, *United States v. Charles*, 883 F.2d 355, 357 (5th Cir. 1989); *United States v. Hunn*, 344 F. App'x 920, 921 (5th Cir. 2009) (per curiam); *United States v. Waits*, 581 F. App'x 432, 434 (5th Cir. 2014) (per curiam); *United States v. Rosa*, 499 F. App'x 358 (5th Cir. 2012) (per curiam).