# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-40098

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

ELDEN DON BRANNAN,

*Defendant—Appellant.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:22-CR-184-1

---

Before ELROD, WILLETT, and DUNCAN, *Circuit Judges.*

STUART KYLE DUNCAN, *Circuit Judge*:

A federal jury found Elden Don Brannan guilty of possessing an unregistered "destructive device" in violation of 26 U.S.C. § 5861(d). On appeal, Brannan contends the evidence failed to support his conviction because the Government did not prove that the device—a sealed metal pipe containing pyrotechnic material harvested from fireworks—was "designed for use as a weapon." *See id.* § 5845(f). We disagree. Under our binding precedent, this exception to § 5861(d) is an affirmative defense, not an element of the crime. We therefore affirm Brannan's conviction.

No. 23-40098

## I.

Brannan lived with his sister and her three children in Corpus Christi, Texas. In 2022, Brannan's sister called 911 to report that Brannan had assaulted her boyfriend and was threatening suicide. When police arrived, she told them Brannan had a "pipe bomb" in his bedroom closet. A bomb squad came and removed the device. Brannan was arrested and later indicted by a grand jury for possessing an unregistered "destructive device" in violation of 26 U.S.C. § 5861(d).

His sister testified at trial that, weeks before the 911 call, Brannan built the device at their kitchen table from disassembled fireworks. Various Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) personnel testified about the device's features.[1] It was a fused metal pipe wrapped in tape, six inches long and one inch in diameter. Its top was sealed with a cardboard and clay plug; its bottom with a waxy material, five dimes, and a plastic bottle cap. Inside was another clay plug along with a powder containing pyrotechnic stars harvested from fireworks, a common feature of pipe bombs. Once the fuse was lit, the powder would burn, generate gas, and—because the pipe was sealed—eventually explode. Metal pieces and the dimes would fly out as shrapnel. Given these characteristics, ATF Agent and Explosive Enforcement Officer Scott McCullough "determined it was an explosive or improvised explosive bomb."

Brannan's defense was that the device was not an explosive but rather a "makeshift roman-candle or fountain firework" that was "designed to emit a pyrotechnic display." His expert witness, Michael Hefti, testified the device would not have exploded because its non-metallic plugs could not

---

[1] There was testimony from two ATF agents, an ATF chemist, and an ATF explosives officer.

No. 23-40098

have contained the expanding gas.[2] At the same time, Hefti admitted the device's metal structure was "not typical" of improvised fireworks. He also repeatedly admitted he did not know what purpose the dimes served, hypothesizing they might have helped seal the bottom of the pipe.

Brannan moved for acquittal after the Government's case, after his case, and again at the close of all evidence. He argued the evidence was insufficient to show he had designed the device as a weapon. Those motions were all denied. Brannan also asked the court to instruct the jury that, to convict him under 26 U.S.C. § 5861(d), it had to find he had intentionally designed the device for use as a weapon. The court rejected this proposed instruction, too. It reasoned that, under *United States v. Beason*, 690 F.2d 439, 445 (5th Cir. 1982), Brannan's intent to design the device as a weapon was not an element of the offense but an affirmative defense. Brannan declined to assert that affirmative defense, however.

Adopting the Fifth Circuit pattern instructions, the district court instructed the jury that, to convict Brannan, it had to find the following:

> *First*: That [Brannan] knowingly possessed a destructive device.
>
> *Second*: That this destructive device was an explosive bomb.
>
> *Third*: That [Brannan] knew the characteristics of the destructive device, an explosive bomb.
>
> *Fourth*: That the destructive device was in operating condition or could readily have been put in operating condition; and

---

[2] Hefti is an attorney with a military background in explosive ordinance disposal and post-blast investigations. Brannan himself did not testify.

No. 23-40098

*Fifth*: That this destructive device was not registered to [Brannan] in the National Firearms Registration and Transfer Record.[3]

*See* Fifth Circuit Pattern Jury Instruction (Criminal) § 2.102 (2019).

The jury found Brannan guilty. The court subsequently sentenced him to 24 months in prison followed by three years of supervised release.

Brannan timely appealed his conviction. As he did in the district court, he argues that the evidence was insufficient to convict him and that the jury instruction omitted an element of the offense.

## II.

We review Brannan's properly preserved challenge to the sufficiency of the evidence *de novo*. *See United States v. Scott*, 70 F.4th 846, 854 (5th Cir. 2023). Nonetheless, "[a] defendant seeking reversal on the basis of insufficient evidence swims upstream." *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020) (citation omitted). We review the evidence "in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007).

Challenges to jury instructions, though typically reviewed for abuse of discretion, are reviewed *de novo* when, as here, "the objection is based on statutory interpretation." *United States v. Stanford*, 823 F.3d 814, 828 (5th Cir. 2016). But it is well-settled "that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct

---

[3] The instructions also explained that it did not matter whether Brannan knew that the firearm was registered or had to be registered.

statement of the law." *United States v. Richardson*, 676 F.3d 491, 507 (5th Cir. 2012) (citation omitted).

## III.

It is a federal crime for a person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The term "firearm" embraces "a destructive device," *see id.* § 5845(a)(8), whose definition in turn includes "any explosive . . . bomb," *id.* § 5845(f). Excluded from the latter definition, however, is "any device which is neither designed nor redesigned for use as a weapon." *Id.* § 5845(f). To convict a defendant under § 5861(d), the Government must prove the defendant "knew of the features" of the destructive device that bring it under the law's prohibition. *See Staples v. United States*, 511 U.S. 600, 619 (1994); *United States v. Reyna*, 130 F.3d 104, 108 (5th Cir. 1997).

Brannan's arguments focus on the exception in § 5845(f) for a device not "designed for use as a weapon." He argues that the Government must affirmatively prove the device *was* designed as a weapon and that the Government failed to do so. Likewise, Brannan argues the jury instructions were inadequate because they did not include this purported element. We disagree with both arguments.

Our precedent forecloses Brannan's first argument. Decades ago, we held in *Beason* that § 5845(f)'s exceptions are affirmative defenses, not offense elements. 690 F.2d at 445. As we explained, "[e]xceptions to statutory definitions are generally matters for affirmative defenses, especially where the elements constituting the offense may be defined accurately without any reference to the exceptions." *Ibid.* That applied here, we continued, because § 5861(d) defines a "destructive device" to include "explosive bombs," meaning its elements can be defined accurately without

referring to the exceptions. *Ibid.*; *see also United States v. Wise*, 221 F.3d 140, 148 (5th Cir. 2000) (noting the "well-established rule of criminal statutory construction that an exception set forth in a distinct clause or provision should be construed as an affirmative defense and not as an essential element of the crime" (citation omitted)).[4] Because we are bound by *Beason*, we reject Brannan's contention that the Government must affirmatively prove § 5845(f)'s "not designed as a weapon" exception as an element of the crime.

Brannan's attempts to get around *Beason* are unavailing. First, he suggests that *Beason* ran afoul of *United States v. Ross*, 458 F.2d 1144 (5th Cir. 1972), and that, as the earlier decision, *Ross* controls. *See, e.g.*, *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 497 (5th Cir. 2016) (explaining "the earlier case controls" if two decisions conflict). *Beason* and *Ross* do not conflict, however. In *Ross*'s "brief discussion" of whether § 5845(f) is unconstitutionally vague, the panel merely noted that § 5845(f) "contains the crucial limitation that a destructive device does not include any device not designed or redesigned for use as a weapon," and that the Molotov cocktail at issue there "ha[d] no use other than as a weapon." *Ross*, 458 F.2d at 1145. But *Ross* did not address whether this "crucial limitation" is an

---

[4] Our sister circuits mostly agree. *See, e.g.*, *United States v. Musso*, 914 F.3d 26, 28 (1st Cir. 2019); *United States v. Posnjak*, 457 F.2d 1110, 1116 (2d Cir. 1972); *United States v. Dalpiaz*, 527 F.2d 548, 552 (6th Cir. 1975); *United States v. Johnson*, 152 F.3d 618, 623 (7th Cir. 1998); *United States v. Ballinger*, 951 F.2d 362 (9th Cir. 1991) (unpublished); *United States v. Basnett*, 735 F.3d 1255, 1257 (10th Cir. 2013). So far, the only circuit to have diverged is the Eleventh. *See United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004) (holding that the "[s]tatutory coverage depends upon proof that a device is an explosive *plus* proof that it was designed as a weapon"); *see also United States v. Neil*, 138 F. App'x 418, 420–21 n.3 (3d Cir. 2005) (noting conflict between *Beason* and *Hammond* without resolving the issue).

element or an affirmative defense. *See ibid.* In *Beason*, we clarified that it is the latter. 690 F.2d at 445.

Brannan next points to *United States v. Harbarger*, 46 F.4th 287 (5th Cir. 2022). There, we reversed Harbarger's § 5861(d) conviction for insufficient evidence. *Id.* at 292. The device at issue was a small, sealed bamboo stick filled with pyrodex (a combustible powder) that Harbarger claimed he used only to "scare beavers and destroy their dams." *Id.* at 291, 288 & n.4. We reversed because the Government's only evidence rebutting Harbarger's claim was "conclusional testimony" by an ATF expert that the device could "fragment" and "destroy property." *Id.* at 291. That alone was not enough to overcome Harbarger's testimony that the device had no nefarious purpose. *Id.* at 292. "[B]reaking up a beaver dam," we explained, "cannot alone sustain a finding that a flimsy explosive device is *designed* as a weapon." *Id.* at 291.

*Harbarger* does not help Brannan for multiple reasons. To begin, *Harbarger* does not address whether the § 5845(f) exception is an affirmative defense or an element of the offense. That is unsurprising, since no one raised that issue. And *Harbarger* could not contradict *Beason*, which has been circuit precedent since 1982.

Furthermore, *Harbarger* does not help Brannan on its own terms. The issue in *Harbarger* was the bamboo stick's destructive potential—something the Government utterly failed to prove. *See ibid.* (noting the Government merely burned off some of the pyrodex but did not "provide any other meaningful evidence from which the design to create weaponry could be inferred"). By contrast, the issue here is whether the pipe was meant to explode and fragment or only, as Brannan claimed, to "emit a pyrotechnic display" from one end. The Government provided ample evidence contradicting Brannan's claim and showing the device would explode and

No. 23-40098

produce dangerous metal shrapnel.[5] *Cf. ibid.* (observing that any fragments from the bamboo stick "do not resemble in dangerousness the relevant fragmentation in other cases"). Presented with this evidence on both sides, the jury convicted Brannan. We are not at liberty to disturb its verdict. *See, e.g.*, *United States v. Velasquez*, 881 F.3d 314, 328 (5th Cir. 2018) (per curiam) ("The jury retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." (citation omitted)).

Finally, for all the foregoing reasons, we also conclude that the district court did not err by following our circuit's pattern instructions and declining to add "designed as a weapon" as an element of § 5861(d). *See Richardson*, 676 F.3d at 507 (explaining "[i]t is well-settled . . . that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law" (citation omitted)).

AFFIRMED.

---

[5] For instance, Agent McCullough explained how the pipe's sealed ends would confine the expanding gas and cause the pipe to explode. He also noted that the placement of the fuse and lift charge in Brannan's device differed from those in fireworks. Indeed, Hefti himself noted that the device's metal structure and dimes were not typical of fireworks. And Brannan's sister testified that he had never previously constructed fireworks.

Moreover, *Harbarger* also suggested that, given their inherent dangerousness, "metal pipe[s] containing explosives" are "*per se* weapons under the NFA." 46 F.4th at 289 n.5. Indeed, we have repeatedly determined that pipe bombs are "destructive devices" within the meaning of § 5845(f). *See, e.g.*, *United States v. Charles*, 883 F.2d 355, 357 (5th Cir. 1989); *United States v. Hunn*, 344 F. App'x 920, 921 (5th Cir. 2009) (per curiam); *United States v. Waits*, 581 F. App'x 432, 434 (5th Cir. 2014) (per curiam); *United States v. Rosa*, 499 F. App'x 358 (5th Cir. 2012) (per curiam).